2019 Jun-06 AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEE MOULTRY, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:18-CV-394-RDP |
| | } |
| TONY SERRA FORD, INC., et al., | } |
| | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This case is before the court following a bench trial conducted on April 16, 2019 to determine whether the parties executed an enforceable arbitration agreement. After careful review of all record evidence and testimony, and for the reasons explained below, the court concludes that Defendant Serra Nissan/Oldsmobile, Inc. ("Serra Nissan/Oldsmobile") and Defendant Tony Serra Ford, Inc. ("Tony Serra Ford") are entitled to compel arbitration as parties to the arbitration agreement.

**I.     Procedural Background**

Plaintiff Lee Moultry initiated this suit on March 13, 2018 to remedy Tony Serra Ford's and Serra Nissan/Oldsmobile's (collectively, "Defendants") allegedly discriminatory employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. (Doc. # 1). Instead of filing an answer, Defendants filed a Motion to Dismiss, Without Prejudice, or Stay and Compel Arbitration. (Doc. # 5). Specifically, Defendants argued that an arbitration agreement was contained within Defendants' online employment application and that Plaintiff necessarily signed and consented to the agreement when he submitted his application. (*See generally* Doc. # 26). Plaintiff countered that neither he nor his fiancée saw any arbitration

1

agreement embedded in the employment application, so Plaintiff could not have assented to such an agreement. (Doc. # 14 at 1-4). Furthermore, Plaintiff claimed that the employment application that Defendants produced did not reflect *his* signature. (*Id*. at 7).

Because a genuine issue of material fact existed as to whether Plaintiff assented to an arbitration agreement, the court denied Defendants' Motion (Doc. # 5) and proceeded to a bench trial pursuant to 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."). *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *see also Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1354 (M.D. Ala. 2014) (setting a bench trial for an arbitration issue under 9 U.S.C. § 4).

During the bench trial, Defendants bore the burden to "prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Tyus v. Virginia College*, 2015 WL 4645513, at *1 (M.D. Ala. Aug. 4, 2015). The court heard testimony from three witnesses: Plaintiff; Roger Bradford, the Parts and Services Director for Serra Automotive; and Christianna DeRamus, Plaintiff's fiancée. The court also accepted into evidence and considered the deposition testimony of Jesse Rubenstein, a representative of Citrix System, Inc., which provides Defendants with the RightSignature product that allows applicants to complete and submit job applications online. The court then ordered additional briefing to address whether Defendants were entitled to enforce the arbitration agreement contained in the employment application given that Plaintiff applied to work at a particular dealership that did not ultimately hire him. (Doc. # 46). Upon consideration of all record evidence and testimony, the court issues the following findings of fact and conclusions of law.

**II.     Findings of Fact and Conclusions of Law**

The court begins by comparing Plaintiff's and Defendants' portrayal of the facts surrounding the submission of Plaintiff's employment application containing the arbitration agreement. The court then summarizes its findings of fact in light of the evidence received during the bench trial. Finally, the court examines the language of the arbitration agreement and concludes that both named Defendants, Serra Nissan/Oldsmobile and Tony Serra Ford, are signatories to the arbitration agreement and are entitled to compel arbitration.

    **A.  Bench Trial Testimony**

Plaintiff testified during the bench trial that he filled out and submitted only one employment application on the evening of Sunday, February 14, 2016 while at DeRamus's residence. He stated that he used DeRamus's third generation iPad to review and complete the entire employment application. However, he denied seeing an arbitration agreement embedded in the employment application.[1] According to Plaintiff, the application consisted of only two pages that requested general, personal information from the applicant including name, address, contact information, requested salary, educational background, prior work history, and references. He filled in his personal information, chose Serra Nissan VW as his preferred employer, then asked DeRamus to review the application to ensure he completed every field. He claims that at the bottom of the second page, there was a signature line with a large "X" indicating a place to sign the electronic document. Plaintiff attempted to sign his name with DeRamus's Apple pencil, but he

---

[1] Significantly, Plaintiff testified in a prior deposition that he recalled reading on Serra Nissan's website that Serra Nissan may conduct a motor vehicle check on potential employees. This statement directly conflicts with his denial of having seen the arbitration agreement because the section warning applicants about Serra Nissan's right to conduct a motor vehicle check appears in the middle of the Disclosures and Arbitration Agreement section of the application.

3

was unable to successfully sign. He asked for DeRamus's help and authorized her to sign and submit the application on his behalf.

DeRamus confirmed Plaintiff's testimony that she helped him review and submit only one employment application on the evening of Sunday, February 14, 2016. She also claimed that she saw no arbitration agreement embedded in the employment application. Both Plaintiff and DeRamus recalled reading below the signature line, "I agree to the Terms of Use, Consumer Disclosure, and all pages above." But, they denied seeing the following language appear when they engaged the signature box: "Signature will be applied to page 4. Review before submitting." DeRamus testified that after Plaintiff authorized her to sign and submit the application on his behalf, she used her left hand to sign "Lee A. Moultry" in a freehand, cursive script. [2] They did not print the application after submitting it.

By contrast, Defendants produced two employment applications bearing Plaintiff's name that were downloaded from the Citrix System servers. Citrix System is a separate entity that independently receives and maintains the electronic employment applications submitted through the RightSignature product on Serra Nissan's website. Jesse Rubenstein testified in his deposition that once an employment application is submitted, it is stored in an encrypted fashion on Citrix System's servers. (Jesse Rubenstein Deposition, pp. 8-9). Other than downloading the completed document from Citrix System's servers, the application cannot be changed or altered by anyone— including anyone working for Defendants. (*Id*. at pp. 9, 41, 47, 57).

---

[2] During the bench trial, counsel explained to the court that the signature box in the employment application presents the applicant with two signature options. The applicant may either (1) freehand sign the name (which is the default option) or (2) choose to type the name, allowing the program to generate a cursive electronic signature. DeRamus testified that she operated under the default option and signed Plaintiff's name in a freehand, cursive script.

4

Although Citrix System's records show that the two employment applications with Plaintiff's name were submitted from the same modem, neither was submitted on Sunday evening. Indeed, Citrix System has no record of Plaintiff submitting a job application on Sunday. The Citrix data shows the first employment application was submitted on Monday, February 15, 2016 at 6:33 a.m. PT. (Doc. # 47-1). While this application does not reflect a visible signature, Plaintiff testified that the personal information matched the information he claims he submitted on Sunday evening. Defendants claim that the second employment application was submitted later that Monday at 5:27 p.m. PT. (Doc. # 47-1). This second application shows a visible cursive signature reading "Lee a. Moultry," but the personal information on the first two pages differs from the first application submitted earlier that morning. Notably, the second application contains the following material discrepancies: (1) a requested salary of $17.50 instead of $18; (2) an availability date of 2/16/16 instead of 2/15/16; (3) a contractor, Ronald Worsham, as a personal reference, though Plaintiff and DeRamus testified that they did not know anyone by that name; and (4) Christianna DeRamus was categorized as Plaintiff's financial advisor instead of his friend. (Doc. # 47-4).[3]

Plaintiff further testified that he has no recollection of submitting two different applications, and he disputes the authenticity of the two produced applications. In particular, Plaintiff maintains that the signature on the second application is not his signature because (1) he witnessed DeRamus sign his name "Lee A. Moultry," and further, (2) he never signs his name with a lowercase middle initial.

---

[3] Plaintiff's counsel accounted for these differences by arguing that Defendants could have altered the information on his employment application after receiving it in PDF form. The court is unpersuaded by this theory. Indeed, it strains logic. Counsel could not articulate any potential motive Defendants would have to either change the information in Plaintiff's employment application or submit a new application in his name with slightly different information. A much more likely explanation is that Plaintiff (or DeRamus) submitted a second application.

Bradford testified that he oversees eleven dealerships in his capacity as the Parts and Services Director for Serra Automotive. He recounted meeting Plaintiff at the Serra Nissan store on Saturday, February 13, 2016, while Plaintiff was waiting for an oil change. Bradford testified that Plaintiff expressed interest in applying for a job as an auto technician, so Bradford advised him to apply online at serranissan.com. After he received Plaintiff's application from Human Resources at Serra Automotive, he offered Plaintiff a job at Tony Serra Ford in Talladega. At the time, no positions were available at Plaintiff's desired location, Serra Nissan VW. Bradford also clarified that there is no separate Oldsmobile dealership, and to the best of his knowledge, the Nissan store and the Volkswagen store are one corporate entity.

### B. Findings of Fact

After hearing the testimony at the bench trial, assessing the witnesses' credibility, and observing a live demonstration of how an employment application is submitted on Defendants' website, the court credits Defendants' framing of the facts and concludes that (1) the employment application contained an arbitration agreement on the last two pages of the employment application, which Plaintiff would have seen had he scrolled to the bottom of the document (or, at a minimum, was responsible for reviewing before signing and submitting the application); and (2) either Plaintiff or DeRamus (with Plaintiff's authorization) submitted two employment applications in Plaintiff's name and (at least) signed the second application. The court makes the following additional findings of fact.

1. On Saturday, February 13, 2016, Plaintiff and DeRamus visited the Serra Nissan dealership located at 1500 Center Point Parkway, Birmingham, Alabama, 35215. While waiting for an oil change, Plaintiff spoke with Bradford about applying for an auto technician job.

Although they did not discuss Plaintiff's background or qualifications, Bradford directed him to go to the Serra Nissan website and submit an employment application.

2. Serra Nissan contracts with Citrix System for the use of its RightSignature product, which allows for documents to be completed, signed, and submitted electronically. (Jesse Rubenstein Deposition, pp. 5-6). Defendants used this product on serranissan.com to create an online platform for applicants to fill out and electronically submit employment applications.

3. Citrix System keeps records of all account activity that occurs through the RightSignature program on Serra Nissan's website. (Jesse Rubenstein Deposition, pp. 10-13). The system records when a document is created, viewed, signed, or completed. (*Id.*).

4. On Sunday, February 14, 2016, Plaintiff used DeRamus's third generation iPad to visit the serranissan.com website while at her residence. The Citrix System account activity records for Serra Nissan's RightSignature account show that Plaintiff viewed the application at 10:08 a.m. PT. (Doc. # 47-1 at 13).

5. At the time Plaintiff visited the serranissan.com website, there was a RightSignature box containing an electronic job application. The application consisted of four pages and allowed the applicant to scroll to the bottom of the application. The top portion of the application directed the applicant, "Before proceeding, please review the Terms of Use and Consumer Disclosure." Below two fields requiring the applicant's name and email address, there were three links to the Terms of Use, Consumer Disclosure, and Privacy Policy. None of these links included an arbitration agreement.

6. Directly below these links, the application read, "Serra Automotive Group Employment Application." The first two pages required the applicant to fill out general information including name, address, contact information, requested salary, educational

background, prior work history, and references. The application indicated the required fields to be completed in red. When an applicant typed in the required field, the indication changed to green.

7. Plaintiff filled out the application at DeRamus's residence in her presence and using her third generation iPad.

8. The application allowed an applicant to specify which dealership he or she preferred to work at. The application stated: "What dealership are you applying to (Serra Nissan VW, Serra Visser Nissan, Ford)?" Plaintiff chose the Serra Nissan VW option.

9. The application also asked, "Have you ever worked for this company?"

10. Pages three and four of the application contained the Disclosures and Arbitration Agreement section. This section was visible to any applicant who scrolled down to the bottom of the application.

11. The arbitration agreement identified "the Company (or its owners, employees, agents, directors, and officers)" as a party to the agreement, but it did not define which business entity or entities formed "the Company."

12. Pages three and four of the application contained the following language:

> I agree that any dispute or controversy between me and the Company (or its owners, employees, agents, directors, and officers), which is subject to arbitration under the Federal Arbitration Act ("FAA") and which would otherwise require or allow resort to any court or other governmental dispute resolution forum, arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, my employment by, or my other association with the Company, whether based in tort, contract, statutory or equitable law, or otherwise, specifically including but not limited to any and all matters arising under the Constitutions of the United States or Alabama, any claims for employment discrimination or harassment based on race, color, sex, age, religion, national origin, or disability, and any other federal or Alabama personal injury, civil rights, or employment related laws, regulations, rules or theories, shall be submitted to, and determined by, binding arbitration under the FAA, in conformity with the rules of the American Arbitration Association for the resolution of employment disputes.

13. The arbitration agreement also contained a section entitled "MOTOR VEHICLE RECORD CHECK." However, this section did not refer to "the Company." Instead, it stated, "I hereby give my permission for the Serra Dealership, where I applied for employment" to run a motor vehicle record check.

14. Contrary to Plaintiff's assertion, pages three and four were visible to him when he filled out the employment application. He either saw the information and is now denying he did so, neglected to scroll down to the bottom of the application, or does not remember seeing the last two pages. The court makes this finding for a number of reasons, including: its assessment of the credibility of the witnesses; Bradford's sworn testimony confirming that as of May 1, 2018, the online employment application available at serranissan.com was the same as when Plaintiff applied in February 2016; counsel's live demonstration of the submission of an employment application on Defendants' website; the fact that documents submitted to Citrix are not subject to revisions by Defendants; and the deposition testimony of Jesse Rubenstein confirming that the Disclosures and Arbitration Agreement portion constituted the last two pages of the documents that were uploaded to Citrix System's servers.

15. At the bottom of the application, there was a signature box with a large "X" indicating a place for the applicant to sign his or her name. The language, "I agree to the Terms of Use, Consumer Disclosure, and all pages above," appeared below the signature line. When an applicant engaged the signature box, the following language appeared: "Signature will be applied to page 4. Review before submitting."

16. While attempting to sign his name in this box, Plaintiff could not get DeRamus's Apple pencil to work. Plaintiff asked DeRamus if she could get the pencil to work and authorized her to sign his name for him. DeRamus signed Plaintiff's name at his request and in his presence.

17. Plaintiff did not submit an employment application on Sunday, February 14, 2016. Citrix System has no record of Plaintiff submitting an application on Sunday night. As noted above, the records show that Plaintiff only *viewed* the application on Sunday morning. (Doc. # 47-1 at 13). For whatever reason, the application was not submitted (or, at least, not uploaded) that day.

18. On the morning of Monday, February 15, 2016, Plaintiff submitted his first employment application at 6:33 a.m. PT. (*Id*.). This application does not contain a visible signature.[4] (Doc. # 47-5). At 8:34 a.m. PT, Citrix Systems and/or RightSignature emailed a link to an employment application submitted by Plaintiff to manager@serranissan.com. (Doc. # 47-6). The reference number for the employment application contained within the email matches the reference number on the RightSignature Signature Certificate on the last page of the employment application. (Docs. # 47-6; 47-5 at 5).

19. Plaintiff submitted a second employment application on Monday, February 15, 2016 at 5:27 p.m. PT. (Doc. # 47-1). This second application contains a visible cursive signature, reading "Lee a. Moultry." (Doc. # 47-7). At 7:27 p.m. PT, Citrix Systems and/or RightSignature emailed a link to an employment application submitted by Plaintiff to manager@serranissan.com. (Doc. # 47-8). The reference number for the employment application contained within the email matches the reference number on the RightSignature Signature Certificate on the last page of the employment application. (Docs. # 47-8; 47-6 at 5).

---

[4] During his deposition, Rubenstein testified that although RightSignature does not allow an application to be submitted unless it is electronically signed, the product can pick up anything it views as a signature even though the application does not show a visible electronic signature—even a stray mark. (Jesse Rubenstein Deposition, pp. 18, 34, 45, 56-57). The court is persuaded that this is likely why Plaintiff's first application does not reflect a visible signature.

20. Either Plaintiff or DeRamus (who was fully authorized to do so by Plaintiff) signed the second employment application.

21. The Citrix System records show that both employment applications were submitted from the same IP address and modem. (Doc. # 47-1; Jesse Rubenstein Deposition, p. 58).

22. Once an employment application is submitted online through RightSignature, it is stored in an encrypted fashion on Citrix System's servers. (Jesse Rubenstein Deposition, pp. 8-9). Other than downloading the completed document from Citrix System's servers, the application cannot be changed or altered by anyone after it is submitted—including anyone working for Defendants. (*Id*. at pp. 9, 41, 47, 57).

23. When Defendants hired Plaintiff, there were no jobs available at Serra Nissan VW. So, Bradford hired Plaintiff to work for Tony Serra Ford. Plaintiff was later transferred to Serra Nissan/Oldsmobile.

### C. Conclusions of Law

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision 'reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)). In fact, the policy favoring arbitration is so strong that any doubts surrounding the arbitrability of the dispute must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Costr. Corp.*, 460 U.S. 1, 25 (1983). That being said, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Wheat, First*

*Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 478 (1989)).

Under Alabama law, "a party seeking to compel arbitration must prove (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013) (citing *Allied Williams Co., Inc. v. Davis,* 901 So.2d 696, 698 (Ala.2004)). Because Plaintiff does not dispute that his employment as an auto technician involved servicing automobiles at the subject dealerships, this qualifies as a transaction affecting interstate commerce. As such, the court's analysis focuses solely on the first element. And, whether an agreement to arbitrate exists is "simply a matter of contract." *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The elements of a valid contract include "an offer and an acceptance, consideration, and mutual assent to the terms essential to the formation of a contract." *Shaffer v. Regions Financial Corp*., 29 So. 3d 872, 880 (Ala. 2009).

Plaintiff contests the validity of the arbitration agreement on two grounds. First, he asserts that he never saw, signed, or agreed to any arbitration agreement contained within the employment application. Second, he argues that even if he assented to an arbitration agreement, Defendants cannot compel him to arbitrate his claims because neither entity is a party to the agreement. Upon consideration of the factual findings above, the court addresses each argument in turn and concludes that (1) Plaintiff assented to the arbitration agreement contained within the employment applications; and (2) Defendant Serra Nissan/Oldsmobile and Defendant Tony Serra Ford are entitled to enforce the arbitration agreement as parties to the agreement.

### i. Plaintiff Assented to the Arbitration Agreement Contained Within the Employment Applications

Plaintiff's first argument challenging the validity of the arbitration agreement is easily resolved in Defendants' favor, particularly in light of the court's factual findings above. As explained earlier, the court concludes that (1) pages three and four of the employment application on serranissan.com included the Disclosures and Arbitration Agreement section, which Plaintiff either saw, or at a minimum, would have seen had he scrolled down to the bottom of the application; and (2) either Plaintiff or DeRamus (with Plaintiff's authorization) submitted two employment applications and visibly signed at least the second application in Plaintiff's name.[5] The court finds that an arbitration agreement was embedded in the employment applications for the following reasons. First, Bradford has testified that is the case, and the online employment application available at serranissan.com was the same as when Plaintiff applied in February 2016. Second, counsel's live demonstration of the submission of an employment application on Defendants' website and Jesse Rubenstein's deposition testimony that the arbitration agreement constituted the last two pages of the documents that were uploaded to Citrix System's servers support that finding. And, the court is also persuaded by the fact that the two employment applications were submitted from the same IP address and modem (Doc. # 47-1; Jesse Rubenstein Deposition, p. 58), and all employment applications submitted to Citrix System's servers are stored in an encrypted fashion, meaning that Defendants could not have altered Plaintiff's applications

---

[5] Because the court concludes that either Plaintiff or DeRamus (with Plaintiff's authorization) signed at least the second employment application, the court need not address Plaintiff's contention that an unsigned arbitration agreement is unenforceable. However, the court briefly notes that "[t]he Federal Arbitration Act only requires that there be a written provision in a contract; it does not specify that a party's assent to the terms of the contract containing an arbitration provision can be evidenced only by that party's signature." *Lanier Worldwide, Inc. v. Clouse*, 875 So. 2d 292, 296 (Ala. 2003); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368-69 (11th Cir. 2005). Also, to the extent Plaintiff argues that the arbitration agreement is unenforceable because Defendants did not sign it, "[i]t is well settled than an employer signature is not necessary for an arbitration agreement to be valid." *Campbell v. Pilot Catastrophe Services, Inc.*, 2010 WL 3306935, at *7 (S.D. Ala. 2010).

by signing them or otherwise tampering with them. (Jesse Rubenstein Deposition, pp. 8-9, 41, 47, 57). All of these considerations support the court's findings that there was a visible arbitration agreement in Defendants' employment application, and if Plaintiff did not see it, that was because he ignored it or neglected to scroll to the bottom and read the agreement before signing.

Furthermore, Plaintiff is bound by the arbitration agreement even if he did not scroll down and read the entire application. The Alabama Supreme Court has held that "a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document." *Locklear Dodge City, Inc. v. Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997). The court reasoned as follows:

> [A party] should not be excused from [his] contractual responsibilities because [he] took that risk [of not reading the contract before signing]. To hold otherwise would turn the concept of "sanctity of contract" upside down. Allowing parties to avoid their contractual obligations by merely claiming that they did not read a contract would encourage irresponsibility. Those responsible enough to read their contracts would be bound to their terms, while those reckless enough not to read their contracts could avoid their terms; in addition to avoiding the contract terms, the party who did not read the contract could file a legal action against the other party for suppressing something that was stated clearly in the contract. This is too perverse a result to contemplate. Moreover, modern society relies on written agreements.

*Id*. As the court noted at the conclusion of the bench trial, Plaintiff is no different than an individual who signed a written contract without reading the document carefully. In fact, Plaintiff even received a warning that the employment application contained four pages as soon as he engaged the signature box: "Signature will be applied to page 4. Review before submitting." Accordingly, Plaintiff is bound to comply with the arbitration agreement regardless of his failure to read the entire application before signing.

### ii. Defendants' Ability to Enforce the Arbitration Agreement

Finding (in the abstract) that Plaintiff is bound by the arbitration agreement is not enough to compel arbitration in this case because there is at least a colorable argument that Plaintiff was not hired to work for the entity he designated on his employment applications—Serra Nissan VW. Indeed, this would be a straightforward case had Plaintiff ultimately been hired to work at the Serra Nissan VW dealership. Instead, Plaintiff was first hired by Tony Serra Ford, and was later transferred to Serra Nissan/Oldsmobile. Defendants argue that because Plaintiff's Complaint alleges that Defendants are a single integrated enterprise and/or joint employer, he should be estopped from now asserting that either one or both Defendants are not parties to the arbitration agreement. (Doc. # 49 at 3-4). While the court recognizes that Plaintiff has taken what appears to be inconsistent positions, whether Defendants are "joint employers" for the purposes of Title VII and Section 1981 is a separate legal question from whether Defendants are parties to the arbitration agreement. The second inquiry, which now occupies the court's focus, deals with Plaintiff's assent to enter into an arbitration agreement with either one or both parties. Thus, at least at present, the court is unconcerned by Plaintiff's "alternative" legal theories.

With the foregoing in mind, the court ordered supplemental briefing after the bench trial on two questions: (1) "Whether Serra Nissan/Oldsmobile, Inc. is a separate legal entity from Serra Nissan VW or simply another dealership under the Serra Nissan VW umbrella or within the same corporation"; and (2) "Whether the fact that Plaintiff applied to work at the Serra Nissan VW dealership, but was hired by a different dealership affects the enforceability of the arbitration agreement with respect to Tony Serra Ford, Inc. and Serra Nissan/Oldsmobile, Inc." (Doc. # 46). The court addresses each question in turn.

### 1. Defendant Serra Nissan/Oldsmobile and Defendant Tony Serra Ford Are Both Parties to the Arbitration Agreement Entitled to Compel Arbitration

Defendants argue (contrary to Plaintiff's assertion) that both named Defendants are parties to the arbitration agreement. (Doc. # 49 at 2-3). Specifically, they assert that although the arbitration agreement identifies "the Company" as a party to the agreement, a review of the entire application makes it clear that "the Company" refers to all three dealerships under the Serra Automotive umbrella—Serra Nissan VW, Serra Visser Nissan, and Tony Serra Ford. (*Id*.). For the reasons explained below, the court agrees and concludes that both Defendants may enforce the arbitration agreement as parties to the agreement.

Defendants' argument boils down to a question of contract interpretation. As such, the court must first look to the plain language of the contract. The agreement's plain language indicates that the arbitration agreement is between the applicant and "the Company (or its owners, employees, agents, directors, and officers)." (Docs. # 47-5; 47-7). Although the arbitration agreement does not define "the Company," it does draw a clear distinction between "the Company" and "the Serra Dealership, where I applied for employment." (*Id*.). To be sure, "when any specific term applies to only the dealership where [Plaintiff] applied for employment…the application/agreement clearly and unambiguously states so." (Docs. # 49 at 3; 51 at 4). For example, the section entitled "MOTOR VEHICLE RECORD CHECK," provides that "I hereby give my permission for the Serra Dealership, where I applied for employment" to run a motor vehicle record check. (Docs. # 47-5; 47-7). By differentiating between "the Company" and "the Serra Dealership, where I applied for employment," it is clear that the term "the Company" refers to Serra Automotive, which encompasses all three dealerships. The fact that Plaintiff selected one dealership on his employment application does not change the fact that "the Company" refers to

16

all three. (*Id.*). This interpretation is supported by the well-established rule of contract construction that "where there is choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms." *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000). Equating "the Company" and "the Serra Dealership, where I applied for employment" (as Plaintiff invites this court to do) would render the agreement's use of the term "Company" meaningless.

Furthermore, an examination of the entire employment application supports Defendants' interpretation of the contract. First, to apply to any of the three dealerships (including Serra Nissan VW and Tony Serra Ford), an applicant must visit serranissan.com to access the employment application. The top of the application reads, "Serra Automotive Group Employment Application." Second, the application then asks the applicant, "What *dealership* are you applying to? (Serra Nissan VW, Serra Visser Nissan, Ford)" (emphasis added). Finally, the application also asks, "Have you ever worked for this *company*?" (emphasis added). Again, the employment application itself draws a distinction between the Company and the three dealerships. In sum, the plain language of the arbitration agreement combined with the language of the employment application shows that "the Company" encompasses all three dealerships under the Serra Automotive umbrella, including Serra Nissan VW and Tony Serra Ford. Thus, Defendant Tony Serra Ford (and Defendant Serra/Nissan Oldsmobile, as explained below) is a party to the arbitration agreement with the right to enforce arbitration against a signatory.

The next question is whether the agreement binds Plaintiff as to any of his claims against "Serra/Nissan Oldsmobile," since he chose Serra Nissan VW on his employment application. The court agrees with Defendants that Serra Nissan/Oldsmobile is a party to the arbitration agreement

because it is not a separate legal entity from Serra Nissan VW. (Doc. # 49 at 11-12). Defendants have submitted two sworn (and uncontested) declarations from Martin J. Brill, the Secretary for Serra Nissan/Oldsmobile, Inc. (Docs. # 49-1; 51-2). Brill states as follows:

> Serra Nissan/Oldsmobile, Inc. is not a separate legal entity from Serra Nissan VW. Serra Nissan/Oldsmobile, Inc. does business as Serra Nissan VW. Serra Nissan VW includes both the Nissan dealership and the VW and/or Volkswagen dealership located beside each other on Center Point Parkway. The Nissan store and Volkswagen or VW store are not separate legal entities.

(Doc. # 49-1). Brill also attaches to his first declaration a Nissan Dealer Sales & Service Agreement and a Volkswagen Dealer Agreement, both of which were in effect during the subject time frame. (Doc. # 49-1 at 3-7). The documents show that at the time Plaintiff submitted his employment applications, Serra Nissan/Oldsmobile, Inc. was doing business as both Serra Nissan and Serra Volkswagen. (*Id*.). Also, the Secretary of State print-out for the 2018 annual report filed by Serra Nissan/Oldsmobile, Inc. lists as its general business address, "1500 Center Point Pkwy." (Doc. # 51-1). This is the same address listed on Serra Nissan's website, www.serranissan.com. Furthermore, Serra Nissan/Oldsmobile, Inc.'s Jefferson County dealer license shows that it does business as Serra Nissan Volkswagen at two locations: (1) 1490 Center Point Parkway and (2) 1500 Center Point Parkway. (Doc. # 51-2 at 4-6).

Plaintiff, on the other hand, argues that (1) Serra Nissan VW is the same entity as Serra Volkswagen, Inc. and (2) Serra Nissan/Oldsmobile, Inc. is a separate legal entity from Serra Nissan VW/Serra Volkswagen, Inc. (Doc. # 50 at 3-4). Defendants counter with Brill's second declaration, which provides:

> Serra Nissan VW is not the same business entity as Serra Volkswagen, Inc. Serra Volkswagen, Inc. was formed in September 1985, as Parkway Volkswagen, Inc. and later changed its name to Serra Volkswagen, Inc. Serra Volkswagen, Inc. was formed in order to operate a dealership but has not performed any type of business since at or around the year 1990, when it filed its last annual report with the

> Alabama Secretary of State. Serra Volkswagen, Inc. does not generate any revenue or income and does not operate a motor vehicle dealership.

(Doc. # 51-2 at 3). Consistent with Brill's declarations given in his capacity as the Secretary for Serra Nissan/Oldsmobile, Inc., the court concludes that Serra Nissan/Oldsmobile, Inc. is not a separate business entity from Serra Nissan VW. Accordingly, Defendant Serra Nissan/Oldsmobile, along with Defendant Tony Serra Ford, is entitled to compel arbitration of Plaintiff's claims as a party to the agreement.[6]

### III.   Conclusion

After careful consideration, and for the reasons explained above, the court concludes that Plaintiff consented to binding arbitration of his claims against both named Defendants. Accordingly, Plaintiff shall proceed to arbitration of his claims against Defendant Serra Nissan/Oldsmobile and Defendant Tony Serra Ford.

**DONE** and **ORDERED** this June 6, 2019.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6] Because the court concludes that both named Defendants are parties to the arbitration agreement with the right to compel arbitration against Plaintiff, the court need not reach Defendants' alternative arguments relating to Defendant Tony Serra Ford's role as a nonsignatory to the agreement.